## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**CHRISTOPHER A. DUNSFORD,**
     **Plaintiff,**

**v.**                                                    **Case No: 3:09cv41/MCR/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
     **Defendant.**

_____

### REPORT AND RECOMMENDATION

     This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Dunsford's application for disability insurance benefits under Title II of the Act.

     Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff, Christopher Dunsford, filed an application for benefits claiming an onset of disability as of May 2, 2005. The application was denied initially and on reconsideration, and plaintiff requested a hearing before an administrative law judge (ALJ). A hearing was held on May 27, 2008 at which Mr. Dunsford was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision (tr.17-24), and Mr. Dunsford requested review by the Appeals Council and submitted additional evidence. The Appeals Council considered the new evidence but declined review. The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).

This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Mr. Dunsford had severe impairments of obesity and degenerative joint disease of the lumbar spine and other joints but that he did not have an impairment or combination of impairments that met or equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; that he had the residual functional capacity to perform the full range of sedentary work; that he could not perform his past relevant work; that he was 39 years old, a younger individual, with a high school education; that transferability of job skills was not material; that considering his age, education, work experience, residual functional capacity and the testimony of a vocational expert, there were jobs that existed in significant numbers in the national economy that Mr. Dunsford could perform; and that he was not under a disability as defined in the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits.  *See Moore,* 405 F.3d at 1211;  20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB).  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)).  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir.

1987). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

The administrative record contains medical documentation beginning in 1998 when Mr. Dunsford was complaining of back pain. An x-ray showed a normal lumbosacral spine (tr. 197). Thereafter, Mr. Dunsford was seen by his family physician, C. David Smith, M.D., on a regular basis. Visits were only occasional from 1998 until December 2004 when Mr. Dunsford started complaining more about problems with his knees and back. A July 29, 2004 x-ray of the knees showed arthritis (tr. 173). Four days later Dr. Smith treated Mr. Dunsford for a bladder problem, and ordered an MRI of the knees which was done on August 25, 2004. That test was read as showing a meniscus tear in the right knee. X-rays taken on October 28, 2004 disclosed mild sclerosis at the facet joint complexes in the lower lumbar spine (tr. 125).

On January 26, 2005, Mr. Dunsford was seen by an orthopedic surgeon, Mark Caylor, M.D. At that time Mr. Dunsford was 39 years old and asked for an evaluation of his knees, ankles and upper thighs. He complained of problems for several years that had been getting progressively worse. On physical examination he was noted to be markedly obese but in no acute distress. There was some crepitus in the knees and tenderness at the medial joint line on both sides. There was a small amount of swelling in the right knee. X-rays showed some mild degenerative changes in the hips and knees, particularly in the left knee. An MRI of the right knee showed a tear of the posterior horn of the medial meniscus with some degenerative changes. There were no signs of degenerative changes in the ankle joint but there were some degenerative changes in the mid foot bilaterally. Dr. Caylor indicated that he thought the underlying cause was Mr. Dunsford's weight and that he would have

to lose some weight or he would need total knee replacements in the future. Dr. Caylor opined that Mr. Dunsford could possibility benefit from a partial meniscectomy on the right side, and Mr. Dunsford indicated that he would think about it (tr. 111).

Mr. Dunsford claims his onset date as of May 2, 2005, which was approximately four months after his first visit to Dr. Caylor. He saw Dr. Caylor again a month after his onset date, on June 10, 2005. Mr. Dunsford indicated that he was back at work but could not tolerate a full day and had been off for about two weeks. He complained of pain and burning, from both thighs downward and a lot of pain in each knee, into the ankle. On physical examination he was noted to be an obese male in no acute distress. There was tenderness and crepitus in both knees with some swelling around the posterior tibial tendon behind the medial malleolus. He was able to toe stand and to stand on one leg. Dr. Caylor's impression was mild degenerative changes in the hips, moderately severe degenerative joint disease in the knees, left worse than the right, flat feet with tendinitis, bilateral femoral cutaneous nerve syndrome and obesity. Dr. Caylor indicated that the number one thing that should be dealt with was Mr. Dunsford's weight. He noted that they had previously discussed a possible meniscectomy but as of this visit the knee pain was symmetric on both sides and arthroscopic surgery would not be beneficial. It was felt that Mr. Dunsford should be on an anti-inflammatory medication and have therapy (tr. 110).

On August 8, 2005, Mr. Dunsford went to the emergency room complaining of right leg pain and gout in his foot and was seen by Dr. Smith. Dr. Smith noted that the past medical history revealed hypertension, diabetes mellitus type II, GERD, and recurring gout. On physical examination there were no abnormalities noted other than complaints of severe pain in the right foot which was noted to be suspected degenerative joint disease and possible gout (tr. 135). On September 21, 2005, x-

rays of the lumbar spine disclosed mild osteoarthritis and a sonogram of the right leg showed no evidence of deep venous thrombosis (tr. 158).

Later that year, on December 17, 2005, plaintiff was seen for a consultative examination by Tom Kersch, M.D. Mr. Dunsford gave a history consistent with what has been noted previously. On physical examination he was alert and oriented but overweight. He did not require an assistive device, was able to bear weight on his heels and toes and could squat and come to a standing position with stabilization of the table. He had full grip strength and negative straight leg raising in both legs. There was no swelling in his knees. There was some tenderness diffusely along his right knee but no instability. There was no swelling in his ankles or feet. Dr. Kersch's overall impression was that Mr. Dunsford had insulin-dependent diabetes, hypertension, GERD, probably degenerative joint disease based on an MRI revealing a tear in his meniscus without surgical intervention, intermittent gout, low back pain without radicular symptoms, a history of nephrolithiasis, and elevated cholesterol. Dr. Kersch did not find that there was any need for an assistive device for walking (tr. 201-204).

In early 2006, Mr. Dunsford returned to Dr. Smith and saw him on a monthly, sometimes bi-weekly basis through February of 2007. Dr. Smith's record entries are difficult to read. There was very little in the way of abnormality noted in any of his records other than a block checked under "Extremity: Without cianosis, clubbing or edema. ROM: NL joints - NL." That line was generally marked abnormal as was the line "Back: No Hyphosis or scoliosis. No CVA tenderness." How these areas were abnormal was not described and there was nothing indicating such things as range of motion testing, straight leg testing, specific muscle strength testing or neurological testing (tr. 223-259).

In early 2006, Dr. Smith referred Mr. Dunsford to Phillip Benton, M.D., an orthopedic surgeon, for right arm pain and deformity, right and left knee pain, and right and left ankle pain. Physical examination revealed an alert patient using a

crutch. He was moderately obese. There was some swelling in the ankles and knees. His right arm musculature indicated a probable biceps tear without significant loss of power. Ambulation was independent without assistance. Dr. Benton's impression was right proximal biceps rupture but no reason for surgery because power was essentially normal. Dr. Benton felt that the swelling in the knees was possibly related to gouty arthropathy. In a physical capacities evaluation dated March 1, 2006, Dr. Smith indicated that Mr. Dunsford could sit for one and one-half hours and stand/walk for one and one-half hours at a time, could sit for three hours, and could stand/walk for three hours during an eight hour day, could lift and carry up to ten pounds frequently, and more than that only occasionally. There were no restrictions on grasping and fine manipulation. There were some restrictions on pushing and pulling with his arms. There was total restriction on the use of feet for repetitive movements and Mr. Dunsford could not bend, crawl or climb and could only occasionally squat (tr. 253). Also on March 1, Dr. Smith filled out a clinical assessment of pain in which he indicated that plaintiff's pain was so intractable as to be virtually incapacitating. Also on March 1, Dr. Smith signed a diabetes questionnaire in which he indicated that any diabetes-related limitation on Mr. Dunsford's ability to perform work activity was slight (tr. 255). On March 30, Dr. Smith filled out a form which is difficult to read, but which in essence said that Mr. Dunsford had severe tenderness and spasms in his back, knees and ankles, that his gait was slow and limping, and that he needed an assistive device when he had a gout flare-up (tr. 251). A year later, on March 26, 2007, Dr. Smith filled out additional forms which were essentially identical to the forms he had filled out a year earlier (tr. 220-221).

From March 2007 until late January 2008 there is no record that Mr. Dunsford saw Dr. Smith at all. He returned, however, on January 31, 2008 and saw Dr. Smith

six times through May 30, 2008. Dr. Smith's notations were consistent with what he had noted earlier. On April 22, 2008, Dr. Smith filled out yet another set of forms that were in all respects identical to the others he had already filled out.

On July 8, 2008, after the May 27, 2008 hearing before the Administrative Law Judge, sonograms disclosed mild bilateral common carotid artery velocity elevations and an echocardiogram was read as showing mild left ventricular hypertrophy with normal left ventricular function, mild biatrial enlargement without significant valvular disease, and mild right ventricular enlargement with mild elevation in right ventricular systolic pressure (tr. 235).

After the ALJ's July 27, 2008 unfavorable decision, Mr. Dunsford continued to see Dr. Smith on a monthly basis and on November 12, 2008 Dr. Smith filled out forms identical to his early forms except that he indicated that pain would be distracting as opposed to intractable and that Mr. Dunsford could stand and walk for only two hours rather than three (tr. 292-293).

Plaintiff returned to Dr. Benton in July 2008 for left facet injections with generally good results (tr. 306). Mr. Dunsford last saw Dr. Benton on November 11, 2008 essentially unchanged. On physical examination Dr. Benton noted obesity, slow motion, difficulty with ambulation and walking with a limp. There was mild grade 1 warmth in the knees and positive lumbar extension testing. Dr. Benton's impression was sinuvitis related to bilateral knee osteoarthropathy. This condition was treated with injections without difficulty (tr. 350).

## DISCUSSION

Mr. Dunsford argues that the ALJ erred in failing to give appropriate weight to the opinion of his treating physician, in finding that he could do sedentary work, in rejecting his subjective complaints of pain, and in failing to find that his diabetes mellitus was severe, and that he was disabled from his onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial

evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that Mr. Dunsford was not disabled, in light of his physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

    1.   <u>Treating physician.</u>

    Mr. Dunsford first contends that the ALJ erred in not giving appropriate weight to the opinion of his treating physician, Dr. Smith. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; *see also Lewis*, 125 F.3d at 1440 (citing cases).

    If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4)

consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 CFR § 404.1527(d)(1);  *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005).   However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability.  *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241.    Failure to do so is reversible error.  *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[1] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

Mr. Dunsford argues that Dr. Smith was his treating physician for a very long time - from 1994 to through October, 2008 - at least fourteen years, and that Dr. Smith was in the very best position to know his physical capabilities.  He says that the ALJ failed to specify how Dr. Smith's opinion is contradicted by the opinions of other medical experts and that he erred in finding inconsistencies in Dr. Smith's records.  The Commissioner argues that the ALJ appropriately considered all the evidence and gave appropriate weight to Dr. Smith's opinion.

As Mr. Dunsford concedes, Dr. Smith's records were largely illegible (doc. 16, p. 8).  However, the records do not support his argument that Dr. Smith recorded

---

[1]*MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

"severe and/or chronic low back pain and lower extremity pain, the implication being that Dr. Smith felt the pain was severe" (*id.*). Rather, the patient complaints section of the medical records show Mr. Dunsford complaining of severe pain, but that is not a word generally used in Dr. Smith's diagnosis section.

Moreover, the ALJ identified several reasons for discounting Dr. Smith's opinion. Most importantly, the ALJ found no basis in the medical recording for a finding that Mr. Dunsford could not sit for more than three hours in a workday. Nowhere did Mr. Dunsford ever make such a claim, and nowhere in the record is there any notation that he had pain while seated. Indeed, his complaints were related to his knees and low back, generally while walking, not while seated. Also, neither of Mr. Dunsford's other physicians, nor the examining physician, placed any restrictions on sitting. The ALJ'S determination was therefore supported by substantial record evidence and Mr. Dunsford is not entitled to reversal on this ground.

2. <u>Residual functional capacity.</u>

Mr. Dunsford next contends that the ALJ erred in finding that he had the residual functional capacity to do sedentary work. This is the other side of the coin concerning Dr. Smith's opinion. Mr. Dunsford argues that none of the physicians, treating, examining or consulting, reached the same conclusion about residual functional capacity that the ALJ did, and that therefore his finding was erroneous. This argument assumes that the ALJ is required to choose the opinion of a particular physician when he determines residual functional capacity. This is not correct. *See, Schmidt v. Apfel*, 496 F.3d 833, 845 (7th Cir. 2007) (holding that in determining a claimant's residual functional capacity, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of the claimant's physicians"). Rather, the ALJ develops his own residual functional capacity based on the entire record. That is what was done here. There was substantial record

evidence to support the ALJ's determination that Mr. Dunsford had the residual functional capacity to do sedentary work.

>    3.    <u>Subjective complaints of pain.</u>

Mr. Dunsford next contends that the ALJ erred in discounting his subjective complaints of pain.  As this court is well aware, pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[2] test, as follows:

>    In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard."  *Wilson, supra*, 284 F.3d at 1226.

---

[2]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of*

*Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[3] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here, the ALJ discounted Mr. Dunsford's subjective complaints of pain, and his credibility, based on his review of the medical record and on Mr. Dunsford's testimony at the hearing. As shown above, the medical record did not paint a picture nearly so dire as Mr. Dunsford suggests, and it was well withing the realm of the

---

[3]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

ALJ'S duty to judge for him to find that Mr. Dunsford's subjective complaints of pain were less than fully credible.

    4.    <u>Diabetes.</u>

    Finally, Mr. Dunsford contends that the ALJ erred in not finding his diabetes mellitus to be severe as defined in the regulations. At step two the ALJ must determine whether the claimant has a severe impairment. 20 C.F.R. § 1520(c). The burden at this step is on the claimant. *Chester v. Bowen, supra.* The Commissioner's regulations provide:

> What we mean by an impairment(s) that is not severe.
>
> (a) **Non-severe impairment(s).** An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
> (b) **Basic work activities.** When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include--
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521. The Commissioner has adopted an interpretive ruling that specifically addresses how to determine whether medical impairments are severe. The ruling provides in part:

> As explained in 20 C.F.R. §§ 404.1520, 404.1521, 416.920(c), and 416.921, at the second step of sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments "of such severity" as to be the basis of a finding of inability to engage in any SGA [substantial gainful activity]. An impairment or combination of impairments is found "not severe"

and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). Thus, even if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA.

SSR 85-28, 1985 WL 56856.

In *Brady v. Heckler*, 724 F.2d. 914 (11th Cir. 1984) the Eleventh Circuit used the test later adopted in SSR 85-28 to state that a claimant's abnormalities must be of such kind that they would not be expected to interfere with the individual's ability to work. The Eleventh Circuit has further explained that

> [s]tep two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). It is not for the reviewing court to say that under these circumstances plaintiff's impairment is or is not trivial, only that the ALJ must properly justify his finding on that issue. And the ALJ's findings must be supported by substantial evidence.

The ALJ found that Mr. Dunsford's diabetes was not severe because Dr. Smith opined that its effect on Mr. Dunsford was only slight (tr, 21, 255). Mr. Dunsford

counters that this opinion was stated early, and that since that time his blood sugar has risen and he has developed pain in his feet. However, there is nothing in the record to suggest that this was severe. Indeed, a neurologist who tested Mr. Dunsford after the ALJ's decision stated only that there was moderately severe sensorimotor neuropathy which "suggests" diabetes (tr. 318).

Finally, even if the ALJ erred in not finding Mr. Dunsford's diabetes to be severe, any such error was harmless. The ALJ found that Mr. Dunsford could do sedentary work. The Commissioner's rules define "sedentary work" in part:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Courts will disregard any errors or defects in a lower tribunal that "do not affect any party's substantial rights." Fed.R.Civ.P. 61 (harmless error); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine in the context of a social security case). Nothing in the medical record suggests that Mr. Dunsford's neuropathies would prevent him from doing sedentary work.

Accordingly, it is respectfully RECOMMENDED that the Commissioner's decision be AFFIRMED, that judgment be entered in favor of the defendant, and that the clerk be directed to close the file.

At Pensacola, Florida this 24th day of November, 2009.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**